**ASSOCIATED CONTAINER TRANSPORTATION (AUSTRALIA) LTD., Petitioner,**

**v.**

**UNITED STATES of America and Sanford M. Litvack, Assistant Attorney General of the United States, Respondents.**

**FARRELL LINES INCORPORATED, Plaintiff,**

**v.**

**UNITED STATES of America, Sanford M. Litvack, Assistant Attorney General of the United States and Roger W. Fones, Attorney for the United States Department of Justice, Defendants.**

**HAMBURG–SUDAMERIKANISCHE DAMPFSCHIFFFAHRTS–GESELLSCHAFT, Eggert & Amsinck, d/b/a Columbus Line, Petitioner,**

**v.**

**UNITED STATES of America and Sanford M. Litvak, Assistant Attorney General of the United States, Respondents.**

**80 Civ. 4291 (CLB); 80 Civ. 4307 (CLB); 80 Civ. 4326 (CLB).**

United States District Court, S. D. New York.

Dec. 4, 1980.

Burlingham, Underwood & Lord by John R. Mahoney, Wade S. Hooker, Jr., Walter H. Hinton, II, New York City, for Associated Container.

Cummings & Lockwood by Gary A. MacMillan, Stamford, Conn., for Farrell Lines.

Haight, Gardner, Poor & Havens by Sanford C. Miller, John J. Reilly, Gary D. Sesser, New York City, for Columbus Line.

U. S. Dept. of Justice, by Roger W. Fones, Ted Radosevich, Clifford Altfeld, for defendants.

BRIEANT, District Judge.

Although these actions are filed by different plaintiffs under separate docket numbers, they arise from a single antitrust investigation and seek identical relief. All three plaintiffs name Hon. Sanford M. Litvak, Assistant Attorney General, and the United States of America as party–defendants. Farrell Lines, Inc. also names Roger W. Fones, an attorney for the Department of Justice as a Defendant. The discovery motions discussed below were argued together, and the Court will address the issues presented in all three cases together.

Petitioners are members, *inter alia*, of the Australian/Eastern U.S.A. Shipping Conference, U.S. Atlantic & Gulf/Australia–New Zealand Conference and participate in the New Zealand/U.S. Atlantic & Gulf Shipping Lines Rate Agreement. Pursuant to the Antitrust Civil Process Act, 15 U.S.C. §§ 1311–14 (as amended), three virtually identical Civil Investigation Demands ("CIDs") were served on plaintiffs, in connection with an antitrust investigation to determine whether there had been an actual or potential violation of 15 U.S.C. §§ 1 & 2 by a "conspiracy to restrain and monopolize trade in ocean transportation of commodities between the United States and Australia and New Zealand by resort to group boycotts, reciprocal dealing, and predatory pricing."[1] The CIDs order the production of documents relating to, among other items, the internal structure of the plaintiff companies, their relations and transactions with independent ocean carriers, their transactions with container manufacturers and container leasing firms, restrictive agreements with the New Zealand

Wool Board or Australian Meat Board, and certain agreements and proceedings supervised by the Federal Maritime Commission. After attempts to negotiate a mutually agreeable modification of the CIDs failed, the three shipping companies sought, pursuant to 15 U.S.C. § 1314(b), to set aside or modify the Demands. Each shipping company asserted several of the following jurisdictional grounds as support for its application:

(1) The CID unlawfully seeks to investigate activity which is exempt from the application of the antitrust laws.

(2) The CID unlawfully seeks information from petitioner which has already been and is being sought by the Federal Maritime Commission, the agency which Congress has authorized to regulate the conduct of petitioners. Much of the information has already been produced to the Federal Maritime Commission.

(3) The CID inquires into matters that are within the exclusive jurisdiction of the Federal Maritime Commission.

(4) The CID inquires into matters that are within the primary jurisdiction of the Federal Maritime Commission.

(5) The CID unlawfully inquires into the sovereign acts of the governments of Australia and New Zealand in contravention of the "Act of State" doctrine.

(6) The CID contravenes the *Noerr–Pennington* doctrine by inquiring into dealings between shipping companies and the Federal Maritime Commission and agencies and instrumentalities of Australia and New Zealand.

Each shipping company served interrogatories relating to these jurisdictional objections, citing Rule 33, F.R.Civ.P. as authority.

Farrell Lines also asserts that the CID is tainted by the claimed ethical conflicts of Hon. Sanford M. Litvak, now an Assistant

---

1. The statute, 15 U.S.C. § 1312(b), requires that each CID apprise the recipient of the nature of the conduct constituting the alleged antitrust violation. The CIDs issued on May 13, 1980 to

Farrell Lines, Inc. (CID No. 375), Associated Container Transportation, Ltd. (CID No. 3760), and Columbus Line (CID No. 3764) gave identical notice.

Attorney General, who formerly engaged in the general practice of law in this city. It has noticed the deposition of Mr. Litvak in support of this contention.

The issues presently before this Court involve the right to discovery in this proceeding.[2] Defendants have moved for Protective Orders, pursuant to Rule 26(c), Fed. R.Civ.P., directing that discovery not be had, and plaintiffs have filed motions to compel discovery. At the hearing of these motions, the parties agreed to proceed on the disqualification claim solely on the basis of affidavits. The Court, therefore, grants the Protective Order to bar any discovery directed at Mr. Litvak, personally, with leave for petitioner, Farrell Lines to apply for discovery if it turns out that a factual issue precludes summary judgment.

I now turn to consider whether petitioners are entitled, as a matter of right, to obtain answers to the Interrogatories served on Defendants. Defendants argue that, in CID proceedings, there is no discovery as a matter of right and it should only be permitted in exceptional circumstances to resolve a disputed issue of fact. They also contend that these discovery requests constitute an annoyance and an undue burden because they are neither necessary nor appropriate.

■ Defendants contend that Rule 33 which provides that interrogatories may be served on any defendant as a matter of right after the service of a summons and complaint, is inapplicable to actions or proceedings in district court brought pursuant to the ACPA, which designates the initial pleading as a "petition for an order." Two shipping companies, Associated Container Transportation (Australia) Ltd. [hereinafter Associated] and Hamburg–Sudamerikanische Dampfschifffahrts–Gesellschaft, Eggert & Amsinck d/b/a Columbus Line [hereinafter Columbus] initiated these proceedings by Petitions filed on July 25, 1980 and July 29, 1980, respectively. Farrell Lines, Inc., [hereinafter Farrell], served a

complaint. Defendants request that the Court treat Farrell's complaint as a properly filed "motion" which they contend is the proper procedure to apply for an order of the Court. The Court will determine Farrell's right to discovery as though it had designated its initial pleading as a "petition" authorized by the ACPA. No technical mislabeling of a pleading as a "petition," a "motion," or a "complaint" should alter the substantive rights of any party.

Discovery has been allowed, in other situations, when the action was initiated by the filing of a "petition," *see, e. g., International al Union of Electrical, Radio and Machine Workers v. Westinghouse Electric Corp.*, 61 Labor Cases ¶ 10,480 (S.D.N.Y.1969); *Kennedy v. Rubin*, 254 F.Supp. 190 (N.D.Ill. 1966), or involved a pending motion, *see, e. g., Budde v. Ling–Temco–Vought, Inc.*, 511 F.2d 1033 (10th Cir. 1975); *H. L. Moore Drug Exchange, Inc. v. Smith, Kline & French Laboratories*, 384 F.2d 97 (2d Cir. 1967). The issue, therefore, is not whether the petition that commences an action under the ACPA should be considered the equivalent of a summons and complaint, or of a motion, but whether discovery is available to petitioners in the specific proceeding authorized by the ACPA.

That statute, which established the authority of the Assistant Attorney General to issue CIDs, and the procedure by which a CID recipient could challenge the validity of the Demand, specifically provides that the Federal Rules of Civil Procedure apply to such a petition "[t]o the extent such rules may have application and are not inconsistent." 15 U.S.C. § 1314(e). Both the legislative history of the ACPA and prior court decisions have interpreted this provision to include the right to obtain discovery. In *Hyster Co. v. United States*, 338 F.2d 183, 186 (9th Cir. 1964), the Court noted the applicability of the discovery rules:

"We would add that the demand is enforcible only in a judicial proceeding brought either by the Attorney General

2. Defendants have also filed motions to dismiss which have been adjourned pending resolution of the discovery issues.

or the person served (section 5(a), (b), (d), 15 U.S.C. § 1314(a), (b), (d)). Moreover, section 5(e) (15 U.S.C. § 1314(e)) makes the Federal Rules of Civil Procedure applicable to any petition under the Act. Thus there is available to Hyster, in a petition to modify or set aside the demand, the safeguards afforded by rules 34 and 30(b)."

Relying on *Hyster, supra*, the Court in *In Re Petition of The Cleveland Trust Co.*, 1972 Trade Cases ¶ 73,991 (N.D.Ohio 1969), held that "[t]his application of the rules includes the right to discovery afforded by Rules 26–37." The Court overruled the defendant's objection to interrogatories which sought information as to the identity of the persons who worked on the preparation of the demand and participated in the decision to issue it. This information was sought in support of petitioner's contention that the CID in that case was issued in response to outside "political influence" rather than as part of the conduct of a *bona fide* investigation. *In Petition of Emprise Corp.*, 344 F.Supp. 319 (W.D.N.Y.1972), however, the Court did not allow interrogatories to be served because defendant's affidavit denied the petitioner's allegations of improper motivation and it found no purpose would be served by the answers to interrogatories. The Court distinguished *Cleveland Trust, supra*, by concluding that no factual issue remained for resolution, in view of the affidavit. Unlike these shipping lines, Emprise's activities were not claimed to be exempt from the antitrust laws.

The legislative history of the 1976 Amendments to the ACPA also supports the applicability of the discovery rules. The Senate Report accompanying the original bill introduced to amend the ACPA cited *Hyster* and *Cleveland Trust* with approval and noted that the right to discovery would continue under the amended version of the Act. S.Rep.No.94–803, 94th Cong., 2d Sess. 28–29 (1976).

The House Report also supports this position inferentially. The 1976 Amendments increased the power the Antitrust Division had to obtain information through the use of the CID procedure. At the same time, they increased the protections available to a CID recipient. Among these protections was the right to object to the CID on the ground that it violated the civil discovery standards of the Federal Rules of Civil Procedure. As the House Report explained, this specific provision was added because it had previously been unclear whether the Federal Rules were applicable in this situation or whether they applied only when discovery was sought in connection with a CID proceeding.

"The 1962 Antitrust Civil Process Act expressly incorporated the 'grand jury subpoena' standard of protection for CID recipients. But that Act did not clearly authorize CID objections under the 'civil discovery' standard set forth in this bill. Instead, section 5(e) of the 1962 Act merely provided that 'the Federal Rules of Civil Procedure shall apply to any petition under this Act.' But this language is ambiguous: It is not clear whether it makes the 'civil discovery' standards available only if civil discovery is attempted in the course of and ancillary to court disputes over CIDs, or whether, in addition, it means that CID recipients can raise the same objections to CIDs that civil litigants can raise against civil discovery requests. Legislative history and court decisions under the 1962 Act fail to provide guidance. Thus, in order to resolve this doubt in favor of protecting CID recipients, the Committee adopted the express language of section 3(c)."

*See*, H.Rep.No.94–1343, 94th Cong., 2d Sess. 9–10, *reprinted in* [1976] U.S.Code Cong. & Admin.News, pp. 2596, 2604. This discussion assumed that discovery is available in CID proceedings.

■ The Court concludes that reasonable discovery is available as a matter of right to petitioners in proceedings to set aside or limit CIDs. Since Rule 33 makes no provision that prior leave of court be sought to serve interrogatories, the Court will impose no such requirement.

■ Moreover, even if discovery were not available as a matter of right in these

proceedings, the Court would permit limited discovery. It is true that civil discovery devices are often abused. Ideally, discovery should enable the parties to define the issues and streamline litigation. It is, however, a device civil litigants often employ to burden the Courts and delay litigation. As Judge Kaufman, then Chief Judge of the Court of Appeals for the Second Circuit, observed:

> "[D]iscovery under the liberalized Federal Rules of Civil Procedure, now mirrored in many state codes, has become for many lawyers a game of harassment, with the process constituting little more than an ordeal for parties subjected, in effect, to two trials instead of one. It is a customary, and often successful, tactic to disable the other party both by burdensome demands for discovery and by release of only the most limited information in response to legitimate requests. My point is not that we should expect litigants to act out an Alice in Wonderland script and come forward graciously saying, "Here is damaging information you may use against me." But let us not overlook the fact that the process of extracting the evidence requires the services of an attorney–frequently a well–paid one–and thus has become a very expensive exercise."

See Kaufman, *Judicial Reform in the Next Century*, 29 Stan.L.Rev. 1, 3 (1976). This concern over expense and delay is especially relevant in the present situation. The purpose of the CID procedure is to allow the Antitrust Division to investigate antitrust violations without prematurely becoming involved in a full–blown litigation. That purpose would be defeated if extended discovery were permitted to delay unduly CID enforcement proceedings.

■ The fact remains, however, that petitioners in this action have raised facially legitimate objections to the authority of the Antitrust Division to investigate their activities. *See Petition of Gold Bond Stamp Co.*, 221 F.Supp. 391, 396 (D.Minn. 1963), *aff'd*, 325 F.2d 1018 (8th Cir. 1964). Contrary to the defendants' assertions, a CID may be challenged if the scope of the demand is jurisdictionally defective. The ACPA authorizes the issuance of a CID only when there is "reason to believe that any person . . . may have any information relevant to a civil antitrust investigation." 15 U.S.C. § 1312(a). If the activity being investigated is exempt from the antitrust laws, it cannot be the basis of the investigation. While the Petitioners claim that the conduct inquired into is exempt from antitrust liability, the defendants have countered by presenting a list of the various exceptions to each of these immunity doctrines. However, unlike the defendants in *Petition of Emprise, supra*, who submitted affidavits which answered the factual questions posed by the petitioner's interrogatories, they have not eliminated the need for discovery. In *Petition of Emprise*, the Court held that the defendant's affidavit denying any improper motive for issuing the demand eliminated the need for interrogatories which sought to determine whether an improper motive existed. Although this Court has encountered few situations where competing affidavits have not yielded a factual question, *Petition of Emprise, supra*, may be read to hold that an affidavit may, in some cases, substitute effectively for answers to interrogatories on the same facts. That is not the situation in this case.

The Department of Justice attorneys have specifically declined the opportunity to demonstrate applicability of any of their listed exceptions to the instant investigation. Instead, they rely on *In re Grand Jury Investigation of Shipping Industry*, 186 F.Supp. 298 (D.D.C.1960), where the Court held that it was premature at the investigation stage to quash a grand jury subpoena because the conduct under investigation was claimed to be immune from the antitrust laws. That case is not dispositive. CID recipients may assert jurisdictional objections because the ACPA limits the use of CIDs to investigations of antitrust violations. The Grand Jury subpoena may not be challenged on this basis.

> "CID recipients may also refuse to comply with any CID if the Division has no

jurisdiction to conduct an investigation—which will be the case if the activities at issue enjoy a clear exemption from the antitrust laws. However, such challenges to jurisdiction are not permitted under the "grand jury subpoena" or "civil discovery" standards of this bill; rather, they stem from the bill's express limitation of CID powers to investigations of civil antitrust violations."

H.Rep.No.1343, *supra*, at 11, U.S.Code Cong. & Admin.News 1976 at 2606 (footnotes omitted). While a footnote explains that the "mere assertion of the exemption should not be allowed to halt the investigation," *id.* at 2606 n.30, the Petitioners are entitled to reasonable discovery to substantiate their claims. In asserting their contentions, they need an opportunity to develop the facts which may support their position.

Although many judges and practitioners recognize the wasteful and dilatory aspect of the discovery process as currently conducted in the district courts, as yet, no effective substitute has been found. The interrogatories served in this action are limited to the specific issues raised in the petitions. The Court has adequate power to prevent abuse, which it will use to the extent necessary.

Defendants' motions for protective orders barring discovery are denied. Defendants are ordered within twenty (20) days to answer the complete set of interrogatories served by Columbus and Associated, and Interrogatories Number 46 through 97 served by Farrell Lines. No further discovery will be permitted without leave of court.

Plaintiffs' briefs in opposition to the defendants' motions to dismiss shall be served and filed two weeks after answers to the Interrogatories have been served. Counsel for plaintiffs upon so filing shall telephone Chambers to arrange for an available time for a hearing upon those motions.

SO ORDERED.