PHOENIX BOARD OF REALTORS, INC., Petitioner,

v.

UNITED STATES DEPARTMENT OF JUSTICE, William French Smith, Attorney General of the United States, William Baxter, Assistant Attorney General, Antitrust Division, Respondents.

No. CIV 81–435 PHX–EHC.

United States District Court, D. Arizona.

Aug. 28, 1981.

Rene A. Torrado, Jr., Reuben & Proctor, Chicago, Ill., Daniel J. McAuliffe, Snell & Wilmer, Phoenix, Ariz., for petitioner.

Kathryn W. Tate, U. S. Dept. of Justice, Los Angeles, Cal., for respondents.

## MEMORANDUM AND ORDER

CARROLL, District Judge.

Civil Investigative Demands No. 4441 and No. 4442 were issued on March 25, 1981, (C.I.D.s) and served on the Petitioner, Phoenix Board of Realtors, under the authority granted the Antitrust Division by the Antitrust Civil Process Act, 15 U.S.C. § 1311 *et seq.* Specifically, the investigative demands ordered Petitioner to answer interrogatories and produce certain documents concerning activities perceived by the Division to constitute potentially:

... restrictive membership or other anticompetitive practices in connection with the operation of a real estate multiple listing service, concerted action to establish and maintain uniform fees or rates, and engaging in additional anticompetitive practices, including refusal to deal.

Subsequently, on April 21, 1981, the Phoenix Board of Realtors filed a petition to set aside the investigative demands on the grounds that (a) the demands were issued for the improper purpose of investigating lawful conduct and (b) the demands were unreasonable, oppressive and unduly burdensome. The Government answered the petition by filing a response on May 1, 1981, to which the Petitioner filed a motion to strike. On June 22, 1981, this Court denied the motion to strike, and further ordered the parties to submit memorandum in support of their positions regarding the petition. The order further provided that a hearing would be set on an expedited basis at the request of either party.

The Court has received and considered all the memoranda, affidavits and exhibits so submitted and heard the oral argument of counsel on August 24, 1981. For the reasons which follow, the Petition To Set Aside Civil Investigative Demand No. 4441 and Civil Investigative Demand No. 4442, filed April 21, 1981, is denied.

## I. PETITIONER'S CONDUCT IS NOT EXEMPT FROM INVESTIGATION

Petitioner contends that the C.I.D.s were issued for the improper purpose of investigating lawful conduct and should thus be set aside. In support of this position, petitioner asserts two independent arguments. First, it is argued that the conduct at issue has been sanctioned by the Division in other jurisdictions. Secondly, petitioner insists that the Iowa Supreme Court—in a proceeding in which it claims the Anti-trust Division participated through finances and control—has held that conduct similar to the challenged conduct is lawful. Thus, it is urged that the principles of collateral estoppel preclude investigation into this type of activity.

■ Section 1312, of Title 15, authorizes the Attorney General or his representative to issue civil investigative demands upon any person believed to be in possession of information or documentary material relevant to a civil antitrust investigation. 15 U.S.C. § 1311(c), defines the scope of an "antitrust investigation" to be as follows:

(c) ... any inquiry conducted by any antitrust investigator for the purpose of ascertaining whether any person is or has been engaged in any antitrust violation...

An activity which is exempt from the antitrust laws, cannot form the basis of an antitrust investigation. *Associated Container Transp., Ltd. v. United States*, 502 F.Supp. 505, 510 (S.D.N.Y.1980), 1981–1 CCH Trade Cases ¶ 64093. Thus, while the Division has broad investigatory powers, such power is jurisdictionally limited to non-exempt activities.

In the instant case, the petitioner has failed to demonstrate that the challenged activity is "exempt". They have not cited any statutory exemption with respect to the conduct involved here. Furthermore, the petitioner has not suggested that the underlying legislative history indicates that Congress had considered antitrust immunity for such activities.

■ With respect to petitioner's first argument, the Court finds that the contention that the Phoenix Board of Realtors' activities have been sanctioned by the Division as a result of consent decrees entered into elsewhere, to be without factual or legal support. There is nothing in the record to indicate that the rules and regulations at issue in the consent cases are the same as those challenged here. Nor is there evidence that the Phoenix rules and regulations are implemented in the same manner. The Ninth Circuit in *Ernest W. Hahn v. Codding*, 615 F.2d 830, 835 (9th Cir. 1980), 1980–1 CCH Trade Cases ¶ 63240, on remand *Ernest W. Hahn, Inc. v. Codding*, 501 F.Supp. 155 (N.D.Cal.1980), 1980–81 CCH Trade Cases ¶ 63608, and the Supreme Court in *Maple Flooring Mfrs. Ass'n. v.*

*United States of America*, 268 U.S. 563, 579, 45 S.Ct. 578, 583, 69 L.Ed.2d 1093 (1925), have held that under the Sherman Act "each case must be reviewed in light of its own facts, and prior cases must be read in light of their facts." Thus, whether the Division has entered into consent decrees regarding similar activities is irrelevant to the issue of whether the Division may inquire into the instant conduct for the "purpose of ascertaining whether" there is or has been an antitrust violation.

Likewise, the Court finds that the petitioner's collateral estoppel argument to be unsupported by the record. Petitioner has attempted to create an "exemption" from the antitrust laws by arguing that the Iowa Supreme Court has held that restricting access to a multiple listing service on board membership was not violative of federal antitrust laws, if such membership was available on reasonable and non-discriminatory terms. *See State of Iowa v. Cedar Rapids Board of Realtors*, 300 N.W.2d 127, 1980–81 Trade Cases, ¶ 63–713 (Iowa 1981). It is alleged that the Phoenix Board of Realtors have such "reasonable and nondiscriminatory" membership requirements and that the United States controlled the Iowa action by virtue of "financial and other direct assistance provided by various agencies within the department of Justice" to the state of Iowa. Thus, it is argued that the Division is collaterally estopped from investigating the Phoenix Board's activities under the principles announced in *Montana v. United States*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979).

The Supreme Court in *Montana* delineated seven factors which contributed to its conclusion that the United States, while not a party to the state action, was nevertheless the "laboring oar" and as such collaterally estopped from litigating the same issue elsewhere. The Court found that the United States had controlled the Montana state court litigation in the following manner:

1. required that the suit be filed;
2. reviewed and approved the complaint;
3. paid the attorneys' fees and costs;
4. directed the appeal from state district court to the Montana Supreme Court;
5. appeared and submitted a brief as amicus in the Montana Supreme Court;
6. directed the filing of a Notice of Appeal to the United States Supreme Court;
7. effectuated the abandonment of that appeal on advice of the Solicitor General.

*Montana v. United States of America, supra* at 155, 99 S.Ct. at 974.

 Here, the Government was not a party to the Iowa action. Nevertheless, it is asserted that the United States controlled the Iowa case so as to be collaterally estopped from challenging this conduct in Phoenix, Arizona. The extent of the Government's involvement in or control of the Iowa action cannot be determined from the record presently before the Court. It is clear, however, that more than the mere provision of funding for litigation is required for principles of collateral estoppel to operate against a non-party. To have an appropriate record on this issue the United States will be ordered to submit an affidavit detailing any involvement in the Iowa action.

 Furthermore, the Court is not persuaded that the issues decided by the court in *State of Iowa v. Cedar Rapids Board of Realtors, supra*, are necessarily the same or substantially the same issues implicated in this case. *See Montana v. United States, supra* at 155, 99 S.Ct. at 974. Accordingly, the principles of collateral estoppel would not preclude the Division from inquiring into all Phoenix Board of Realtors' activities at issue in these C.I.D.s.

## II. DEMAND NO. 4441 AND NO. 4442 ARE NOT UNREASONABLE, OPPRESSIVE OR UNDULY BURDENSOME

Petitioner alleges that C.I.D. No. 4441 and No. 4442 are unreasonable under the facts of this case, and must, therefore, be set aside. The basis of this claim is that the

Antitrust Division is demanding "essentially the same documents and information" that has already been obtained by the Federal Trade Commission. That the F.T.C. has been conducting an extensive, independent, industry-wide investigation over the last six years is not disputed. Rather, petitioner argues that the Division should obtain the sought after information from the F.T.C. through the existing agreement between the agencies to exchange such information. The Court does not agree.

At the hearing held Monday, August 24, 1981, petitioner stated in response to the Court's inquiry, that the Phoenix Board of Realtors have not submitted any documents or information to the F.T.C. Furthermore, petitioner has failed to establish by way of affidavit or otherwise, that the information held by the F.T.C. is the same information sought by the C.I.D.s. Instead, the board merely asserts that the information and documents requisitioned are "essentially the same". Thus, the Court is compelled to conclude that the materials held by the F.T.C. would not be responsive to the investigative demands.

■ Nevertheless, assuming *arguendo* that the F.T.C. was in possession of responsive information, this Court finds that such factor does not relieve petitioner of the duty to respond to the demands nor obligate the Division to seek such information from the Commission. *See Petition of Columbia Broadcasting System, Inc.,* 235 F.Supp. 684 (S.D.N.Y.1964).

Accordingly, the petitioner has failed to establish that the investigative demands are unreasonable and therefore the petition to set aside the C.I.D.s on this ground is denied.

The last argument pressed by petitioner is that Demand No. 4442 is vague and overbroad. The Government has repeatedly indicated its willingness to negotiate with petitioner regarding the "burden and scope" of the demands. Such willingness was confirmed by the Government's counsel at the August 24, 1981, hearing. Additionally, counsel indicated that the Government was willing to discuss matters relating to the cost involved in producing the documents. Accordingly, the parties should attempt to resolve these matters, without prejudice to petitioner's rights to move for a protective order in accordance with Local Rule 11(b) and the Federal Rules of Civil Procedure.

Accordingly,

IT IS ORDERED that

1. The Petition To Set Aside Civil Investigative Demand No. 4441 and Civil Investigative Demand No. 4442, filed April 21, 1981, is denied without prejudice to petitioner's right to refile as necessitated by the Government's affidavit submitted in compliance with Paragraph 2 of this Order.

2. On or before September 8, 1981, the Government shall submit an affidavit or affidavits by a person or persons with personal knowledge regarding the nature and scope of the Government's involvement in *State of Iowa v. Cedar Rapids Board of Realtors,* 1980–81 Trade Cases, ¶ 63–713 (Iowa Jan. 14, 1981). At a minimum, such affidavit(s) shall address whether the United States:

(a) required the Iowa suit to be filed;

(b) reviewed and approved of the pleadings filed in the Iowa case;

(c) paid the attorneys' fees and costs;

(d) directed any appeals from the lower state court to the Iowa Supreme Court;

(e) appeared and submitted briefs as amicus in the Iowa action;

(f) directed the filing of a Notice of Appeal to the United States Supreme Court;

(g) effectuated the abandonment of any appeal on the advice of any United States Attorney.

3. With respect to the affidavit outlined above, the petitioner shall have until October 1, 1981, by which to file controverting affidavits, objections or responses. Such response shall, if deemed appropriate, include a motion to renew the petition to set the investigative demands aside.

4. Petitioner's compliance with the civil investigative demands No. 4441 and No. 4442 shall otherwise be made on or before October 16, 1981.

5. The parties shall meet for the purposes of discussing the burden and scope of the investigative demands, and the allocation of the reproduction costs involved in the production of documents. Failing resolution of these problems, then petitioner may move for a protective order in accordance with Local and Federal Rules of Civil Procedure. In the event such becomes necessary, the Court will entertain a motion for sanctions.